Filed 7/10/24  P. v. Martinez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F087204 |
| Plaintiff and Respondent, | (Super. Ct. No. 08CM0370HTA) |
| v. | |
| ALBERTO JORGE MARTINEZ, | OPINION |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kings County.  Robert Shane Burns, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P. J., Peña, J., and Snauffer, J.

In February 2008, the Kings County District Attorney charged appellant and defendant Alberto Jorge Martinez with transportation/sale of methamphetamine (count 1; Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine (count 2; Health & Saf. Code, § 11377, subd. (a)), false identification to a peace officer (count 3; Pen. Code, § 148.9, subd. (a)), possession of drug paraphernalia (count 4; Health & Saf. Code, § 11364), driving with a suspended or revoked license (count 5; Veh. Code, § 14601.1, subd. (a)), driving without a license (count 6; Veh. Code, § 12500, subd. (a).)

Pursuant to a plea deal, defendant was convicted of counts 1 and 3 pursuant to a plea. The court sentenced him to concurrent terms of 180 days in jail and two years in prison.[1]

On September 5, 2023, defendant filed a motion to vacate his conviction pursuant to Penal Code section 1473.7.[2] The court denied the motion on multiple grounds. First, the court concluded that because the motion asserted ineffective assistance by original defense counsel, said counsel was entitled to notice which had not been provided. Second, defendant failed to carry his burden of proving he was unaware of the immigration consequences of his plea. Finally, the court concluded defendant was not diligent in pursuing the motion.

Defendant appeals the denial of his motion.

## FACTS

On February 25, 2008, defendant pleaded guilty to counts 1 and 3 in exchange for dismissal of the other charges. The plea occurred two weeks after the filing of the complaint. Defendant's attorney was present, as was a Spanish interpreter. The court

---

[1] Defendant suggests that, if charged today, count 1 would have been charged as a misdemeanor. (See *People v. Martinez* (2018) 4 Cal.5th 647.)

[2] All further undesignated statutory references are to the Penal Code unless otherwise stated.

asked defense counsel if he explained to defendant "the consequences of a guilty plea" and counsel responded affirmatively.

The court also advised defendant as follows:

"THE COURT: If you are an alien, a conviction would result in your exclusion from the admission to the United States, your deportation or denial of naturalization; do you understand those consequences?

"THE DEFENDANT: Yes.

"THE COURT: Are you a citizen of the United States?

"THE DEFENDANT: No.

"THE COURT: Even if you're in this country legally under a work permit or Visa or some other basis, you would still be subject to deportation as a convicted felon; do you understand that?

"THE DEFENDANT: Yes."

Defendant received a notice to appear from the Department of Homeland Security stating he was subject to removal due to his conviction. Defendant noted in his motion that he was indeed ordered removed from the country.[3]

Defendant argued his motion was timely because he "is filing within reasonable diligence from learning of the relief available under the statute," which was enacted in 2017 and amended in 2019. Defendant was advised of possible relief when his father consulted with Serrato Law Firm. Any delay in seeking relief "has been a result of continued investigation, preparation for this motion, and delayed receipt of his immigration file."

Defendant included a declaration with this motion. Defendant stated he was born in Mexico and moved to the United States in March 1995 when he was 16 years old.

---

[3] Defendant attached what appears to be equivalent to a register of actions in immigration court reflecting that "[t]he Immigration Judge ordered removal" on February 26, 2009.

Defendant's father had obtained legal permanent residency in the 1986 amnesty. Defendant became a legal permanent resident along with his mother and three siblings in 1993. Sometime later, defendant's father and sister became U.S. citizens.

Defendant attended Corcoran High School through 12th grade but did not graduate. From 2002 through 2008, defendant was an active member of a church in Corcoran. Also, from 2002 through 2008, defendant worked for JG Boswell as a machine operator.

Defendant claimed his attorney did not ask about his immigration status, did not advise him that the Department of Homeland Security could deport him as a result of his plea, and did not advise him to consult with an immigration attorney. Because his counsel did not advise him of immigration consequences, defendant "assumed there would be none."

Defendant stated that he had been convicted in 2003 of simple methamphetamine possession and sentenced to 16 months in prison, yet he was not deported. As a result of that experience, defendant thought "nothing would happen to me" with the present case. Defendant would not have entered the same plea deal had he known of the consequences.

Defendant has been living in Mexico since 2009. He stated, "It was not until I recently consulted with my current attorneys that I learned that I had the probability of negotiating a plea that could have prevented all the negative immigration consequences I faced."

Defendant's motion counsel, Fabian Serrato, offered a declaration stating that if he had been consulted regarding the proposed plea in this case, he would have advised against a plea because of the immigration consequences to defendant and his family.

In their reply brief in the trial court, defendant offered the following timeline:

"1. June 1, 2021, letter to the Clerk of the Court - Kings County requesting criminal records.

"2. July 15, 2021, response the Clerk of the Court - Kings County - no records found.

"3. July 30, 2021, letter requesting information from defendant c/o his father to clarify lack of records.

"4. August 6, 2021, letter to Kern County Court Clerk requesting records for defendant.

"5. September 1, 2021, letter to defendant requesting that defendant be fingerprinted to locate records.

"6. October 8, 2021, confirmation of defendant's fingerprint submission to the Federal Bureau of Investigation.

"7. October 20, 2021, response.

"8. December 8, 2021, request for reporter's transcripts from Kings County Criminal Court Clerk.

"9. March 11, 2022, request for records from former counsel.

"10. March 25, 2022, request for plea form from Kings County Criminal Court Clerk.

"11. May 11,2022, request for immigration file under the Freedom of Information Act (FOIA).

"12. July 31, 2022, second request for file.

"13 July 3, 2022, response from Executive Office for Immigration Review re: immigration file.

"14. July 25, 2022, response from Executive Office for Immigration Review re: immigration files found in multiple locations and advising of significant delays in obtaining files.

"15. July 25, 2022, response from Executive Office for Immigration Review re: immigration files found in multiple locations and advising of significant delays in obtaining files.

"16. September 15, 2022, email requesting status of receipt of file.

"17. September 22, 2022, printout that case assigned for processing.

"18. May 1, 2023, receipt of immigration file."

## DISCUSSION

A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence because said conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.  (§ 1473.7, subd. (a)(1).)  It is the moving party's burden to establish the grounds for relief by a preponderance of the evidence.  (*Id*. subd. (e)(1).)

Such a motion may be deemed untimely if it was not filed with reasonable diligence after the later of the following: (1) the moving party received a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal or the denial of an application for an immigration benefit, lawful status, or naturalization; (2) notice that a final removal order has been issued against the moving party, based on the existence of the conviction or sentence that the moving party seeks to vacate.  (§ 1473.7, subd. (b)(2).)

On appeal, we conduct independent review of the issue.  (*People v. Vivar* (2021) 11 Cal.5th 510, 526–528.)  "Where, as here, the facts derive entirely from written declarations and other documents … there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding."  (*Id*. at p. 528, fn. omitted.)

After considering all the relevant evidence and circumstances, we conclude defendant failed to carry his burden of proof by a preponderance of the evidence.

Defendant contends he established that he did not meaningfully understand his plea had adverse immigration consequences.  This contention is belied by some of the strongest evidence possible: a specific, direct advisement of said consequences in open

6.

court.  The court told defendant that if he was an alien, his conviction would result in exclusion, deportation, or denial of naturalization.  The court then asked defendant if he was a U.S. citizen, to which defendant responded, "No."  The court then stated, "*Even if you're in this country legally under a work permit or Visa or some other basis, you would still be subject to deportation as a convicted felon; do you understand that*?"  (Italics added.)  Defendant responded, "Yes."

We understand that some cases have said that express advisements do not preclude a defendant from demonstrating they did not meaningfully understand the immigration consequences of their plea.  (E.g., *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1175.)  Perhaps there may be some cases where a confusing or incomplete advisement may be inadequate to fully inform a defendant of the immigration consequences of their plea.  Even so, this would not be one of those cases.  The court gave an express, unambiguous advisement that defendant would be subject to deportation as a convicted felon if he pleaded guilty.  It is difficult to even conceive of any evidence more probative on the issue of defendant's knowledge of the immigration consequences of his plea than an express advisement of said immigration consequences and defendant's personal, express acknowledgement thereof.

Defendant nonetheless claims he did not understand the immigration consequences of his plea.  Since this assertion is brought by way of declaration rather than live testimony, we are tasked with determining its credibility and weight on appeal.  We observe that defendant's assertion is contrary to the obvious inferences raised by the advisement described above.  The evidence of said advisement – a court reporter's transcript – is highly credible, in contrast to defendant's "self-serving" statements.  (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664.)

Moreover, we note that defendant did not give notice to his trial counsel (see § 1473.7, subd. (g).), who apparently did not participate in the motion proceedings by declaration or testimony.  Consequently, we are left with trial counsel's statement at the

7.

plea hearing that he *did* "fully explain[]" to defendant "the consequences of a guilty plea."

Defendant claims there was "no discernible benefit" to his plea deal. Not so. Defendant had multiple charges dismissed in exchange for pleading guilty to counts 1 and 3. Defendant later acknowledges that charges were dismissed, but notes they were misdemeanor charges. The fact remains, there was discernible benefit to the plea bargain: the dismissal of multiple misdemeanor charges.

Finally, defendant says it is not reasonable to conclude he moved forward with the plea knowing the immigration consequences, given his connections to the United States. However, it is important to remember that a conviction after trial would also have resulted in defendant being subject to deportation. Consequently, it is not out of the question that a defendant might enter a plea deal that results in deportation. Such a defendant might be convinced he will lose at trial and be deported anyway, so they might as well get *some* benefit from a plea deal (such as dismissed misdemeanor charges).

After an independent review of the totality of the circumstances, we conclude that defendant did not establish by a preponderance of evidence that he did not understand the immigration consequences of the plea that led to his conviction and sentence. (See § 1473.7, subd. (e)(1).) Consequently, we affirm the order denying the motion without addressing the court's additional grounds for denying the motion.[4]

## DISPOSITION

The order is affirmed.

---

[4] As a result, we do not reach the issues of timeliness or prejudice (i.e., whether he would have pleaded guilty if he had known the immigration consequences).